## EMIL PETRIK v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 2, 1922.

No. 22,834.

**Switchman riding on gondola car injured by projecting board.**

1. The evidence sustains the finding of the jury that the plaintiff, a switchman, riding on the end of a gondola car, was pinched against it by a board projecting or coming from the car behind, and caused to fall upon the coupler between the cars, and thereby was injured.

[1]Reported in 188 N. W. 327.

**Defendant negligent in inspection.**

    2.  The evidence sustains a finding that the defendant was negligent in failing to discover the board at an inspection point.

Action in the district court for Otter Tail county to recover $40,-000 for injuries received while in defendant's employ.  The answer alleged that plaintiff assumed and appreciated the risks of his employment.  The case was tried before Parsons, J., who when plaintiff rested and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $10,000.  Defendant's motion for judgment notwithstanding the verdict was denied.  From the judgment entered pursuant to the verdict, defendant appealed.  Affirmed.

*D. F. Lyons* and *Frederic D. McCarthy,* for appellant.

*McGrath & Morse,* for respondent.

DIBELL, J.

Action to recover for personal injuries.  There was a verdict for the plaintiff.  The defendant appeals from the judgment entered on the verdict.

1.  The plaintiff was a switchman in the employ of the defendant in its Rice's Point yards in Duluth.  He was injured about 10 o'clock on the night of November 5, 1920.  It was dark and misty.  The switching crew was pulling a drag of 13 or 14 cars.  The movement was northward for a distance of a half mile where a switching movement was to be made.  He was sitting on the rear end of a gondola car loaded with coal, his feet over the end, the right a little lower than the other.  The next car behind him was a Mesaba ore car.  His foreman, riding on the same car, gave a signal to the engineer to stop as they came to the switch.  The stopping resulted in the taking up of the slack between the gondola and the ore car.  His claim is that when the slack was taken up a board which was somewhere on the ore car, perhaps projecting from it, hit his leg which was between the two cars and pinched it against the gondola so that he fell, and that his foot was caught between the drawbar and the deadwood.

The plaintiff does not tell very definitely how it all happened.  He says: "Something pinched my foot against the gondola car and it

come just like surprise, and I see a piece of plank that come from towards the fireman's side." Then he fell down on the coupler. Again he says: "I see some boards blow towards that way and that is all I could realize and I couldn't hold myself at all; I was completely helpless." And on cross he said: "It come from behind the car, the car behind me; just what direction exactly I can't say; I just felt the pinch from the car; it was behind anyhow. * * * And pinched my leg, yes, against the car. Just where it come from I can't say. * * * See a piece of board fly away like that * * * It came and fell against my foot and this board flew away."

The defendant claims that the evidence leaves the cause of the injury conjectural. Plaintiff's story of the board may or may not be true. The jury credited it. The trial court, reviewing the evidence upon the motion for judgment, said:

"There was evidence tending to prove: (1) That some external object pinched or jammed plaintiff's foot against the car on which he was riding and as a consequence the foot got caught between the drawbar and the deadwood; (2) that the object which pinched plaintiff's foot was a board; (3) that this board came from behind—from the direction of the car behind that on the end of which plaintiff was riding; there is no other theory than that it projected from the forward end of the ore car; and (4) that this board was on the ore car before it started on its trip through the yards. There is nothing to indicate the possibility of it having gotten on the car after that."

We cannot say that the plaintiff's story is unbelievable. It may seem strange. The plaintiff may not be able to tell just what occurred, and he may imagine some things. The jury credited his story and the trial court upon a review on the motion for judgment was of the opinion that the finding was one which the jury might properly make. It must stand.

2. The ore car had come from the Carnegie docks some 4 or 5 miles west. Workmen at the docks frequently threw boards upon the cars. It is not shown that boards were thrown on ore cars.

There is evidence of a custom to inspect before the cars came to the Rice's Point yards.   If there was a board on the ore car, as the plaintiff claims, it was a fair question for the jury whether the defendant was negligent in failing to discover it at the point of inspection.   There is nothing to suggest that it got on afterwards. The case is not at all like Slater v. Chicago, St. P. M. & O. Ry. Co. 146 Minn. 390, 178 N. W. 813, nor like Campbell v. Railway T. Co. 95 Minn. 375, 104 N. W. 547.   In neither of these had the car passed an inspection point.   The finding of negligence is sustained.

Judgment affirmed.